IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

HARRY NICK RILEY, JR.,            )
                                  )
         Plaintiff,               )
                                  )
v.                                )          CIVIL ACTION NO. 5:09-01030
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
         Defendant.               )

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.

By Standing Order entered September 25, 2009 (Document No. 4.), this case was referred to the

undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit

Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. §

636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the

Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Harry N. Riley, Jr., (hereinafter referred to as "Claimant"), filed applications

for DIB and SSI on November 19, 2007, (protective filing date), alleging disability as of July 1, 2007,

due to stress, mental issues, and learning problems. (Tr. at 10, 92-94, 95-96, 131, 136.)  The claims

were denied initially and upon reconsideration. (Tr. at 41-43, 46-48, 56-58, 59-61.) On July 14, 2008,

Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 62.) The hearing

was held on January 9, 2009, before the Honorable Harry C. Taylor II. (Tr. at 10-36.)  By decision

dated February 18, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-

18.) The ALJ's decision became the final decision of the Commissioner on July 29, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) Claimant filed the present action seeking judicial review of the administrative decision on September 24, 2009, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

2

20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and

3

extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, July 1, 2007. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following medically determinable impairments: "history of acute sinusitis and allergic rhinitis, history of orthostatic dizziness, learning disorder, [and] borderline intellectual functioning." (Tr. at 13, Finding No. 3.) However, the ALJ determined that Claimant did not have an impairment or combination of impairments that significantly limited, or was expected to limit significantly, his ability to perform basic work activities for 12 consecutive months. (Tr. at 14, Finding No. 4.) At step two of the analysis, the ALJ therefore found that Claimant did not have a severe impairment or combination of impairments. (Id.) On this basis, benefits were denied. (Tr. at 17, Finding No. 5.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 1, 1954, and was 55 years old at the time of the administrative hearing, January 9, 2009. (Tr. at 23, 92, 95.) Claimant has a high school education and one year of vocational schooling for drafting. (Tr. at 25, 135, 139.) In the past, he worked as a cleaner and dishwasher, and a ditch digger. (Tr. at 137.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and summarizes it herein in relation to Claimant's arguments.

On December 26, 2007, Claimant underwent a consultative examination by Sunny Bell, M.A., a licensed psychologist. (Tr. at 13, 168-74.) Claimant denied any serious psychiatric problems and reported that he could not handle stress and feared that he would hurt himself or someone else. (Tr. at 13, 168-69.) He reported having seen a psychologist for a couple of months when in junior high because he hit a female student. (Tr. at 13, 169.) Ms. Bell noted that Claimant was not receiving psychiatric treatment and that he believed psychiatric treatment was unnecessary. (Id.) On mental status examination, Claimant appeared cooperative and motivated, spontaneously generated conversation and exhibited a sense of humor, maintained good eye contact, appeared comfortable,

6

exhibited clear and goal-directed speech, was oriented in all four phases, and had a normal mood and broad affect. (Tr. at 13, 170-71.) His thought processes were logical and organized; he reported no delusions, obsessions, or phobias; his judgment was within normal limits; his immediate and recent memory was normal but his remote memory skills were mildly deficient; his concentration was moderately deficient; and he exhibited no gross psychomotor difficulties. (Tr. at 13, 171.)

The WAIS-III demonstrated a verbal IQ of 91, a performance IQ of 75, and a full scale IQ of 83. (Tr. at 13, 171.) Ms. Bell opined that the IQ scores were an accurate estimate of Claimant's true level of functioning, and noted that the 16 point discrepancy between his verbal and performance IQ was indicative of a learning disability. (Tr. at 13, 172.) Ms. Bell diagnosed a Learning Disorder, NOS and Borderline Intellectual Functioning. (Id.)

Claimant's daily activities were reported to Ms. Bell to include sleeping, managing his own self care, housework, cooking, doing dishes and laundry, and shopping. (Tr. at 13, 172.) He reported that he used a push mower and weedeater to maintain his yard, he could sew if something needed mended, he walked to the post office, read science fiction books, watched television, managed his own finances, and indicated that he could manage a checkbook. (Id.)

Regarding Claimant's social functioning, Ms. Bell noted that Claimant acted within normal limits during the clinical interview, mental status examination, and testing. (Id.) Claimant denied visiting friends or family and he did not date. (Id.) He reported occasionally having gone to the movies and to the mall, and indicated that on a one-on-one basis, he did all right but felt insignificant in crowds. (Id.) He further reported that he sometimes said things that were not socially acceptable. (Id.) Ms. Bell opined that Claimant's pace and persistence were within normal limits but that his prognosis was poor. (Id.)

Dr. Rosemary L. Smith, Psy.D., a state agency reviewing medical consultant, completed a form Psychiatric Review Technique and Mental RFC Assessment, on February 14, 2008. (Tr. at 175-

88, 189-92.) Dr. Smith noted that pursuant to Sunny Bell's consultative examination, Claimant suffered from a learning disorder, NOS; borderline intellectual functioning; and a personality disorder. (Tr. at 16, 175-82.) Dr. Smith opined that these impairments resulted in mild limitations in activities of daily living; moderate limitations in maintaining social functioning, concentration, persistence, and pace; and no episodes of decompensation of extended duration. (Tr. at 16, 185.) She noted Claimant's activities of daily living to include sleeping, managing his self care, housework, cooking, doing the dishes and laundry, shopping, performing yard work, sewing, walking to the post office, reading science fiction books, watching television, managing his finances, and occasionally going to the movies and to the mall. (Tr. at 16, 187.)

Dr. Smith further opined that Claimant's impairments resulted in moderate limitations respecting the following abilities: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 16, 189-91.) All other functional abilities were indicated by Dr. Smith as not significantly limited. (Id.) Dr. Smith opined that Claimant retained "the ability to learn and perform simple, unskilled, work-like activities in an environment that involves limited contact with others." (Tr. at 16, 191.)

On March 3, 2008, Claimant presented to FMRS Health Systems, Inc., on the referral of his attorney. (Tr. at 13, 195-96.) Claimant reported difficulties handling stress, that he would become disoriented and "tell someone off" when he was stressed, that he thought of killing one of his coworkers a year earlier, and that he sometimes talked to himself. (Tr. at 13, 195.) He reported a history of paranoia and that he had a lot of fantasies, primarily sexual in nature. (Id.) On mental status examination, Emily Walden, PA-C, observed that Claimant was cooperative and calm and exhibited slow and relevant speech with coherent thought processes. (Tr. at 13, 196.) Claimant denied suicidal

8

thoughts, plan, or intent, as well as auditory or visual hallucinations, and paranoia. (<u>Id.</u>) He was diagnosed as suffering from a delusional disorder and was assessed a GAF of 30. (<u>Id.</u>)

Claimant returned to FMRS on April 3, 2008, and was examined by Dr. Sunita Singh, M.D., Psychiatrist. (Tr. at 13, 193-94.) Claimant reported that he was referred by his attorney "because he wanted to get 'SSI.'" (Tr. at 193.) He further reported that he wanted to obtain counseling but no medications. (<u>Id.</u>) On mental status examination, Dr. Singh observed that Claimant was overtly pleasant and was a little difficult to interrupt at times due to rapid speech. (Tr. at 13, 193-94.) He denied homicidal or suicidal ideation, plan, or intent, as well as any hallucinations. (Tr. at 13, 194.) Dr. Singh noted however, that it "seemed like he had some magical odd beliefs and had some paranoia that someone at work was against him." (<u>Id.</u>) Dr. Singh opined that Claimant's insight and judgment were fair. (<u>Id.</u>) She diagnosed Delusional Disorder and Schizotypal Personality Disorder. (<u>Id.</u>) Dr. Singh noted that she tried to obtain prior records from FMRS but that they were destroyed in a fire. (<u>Id.</u>)

On May 19, 2008, another state agency reviewing medical consultant, Dr. Timothy Saar, Ph.D., completed a form Psychiatric Review Technique and Mental RFC Assessment. (Tr. at 16, 197-210, 211-14.) As did Dr. Smith, Dr. Saar opined that Claimant's borderline intellectual functioning and learning disorder NOS resulted in mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning, concentration, persistence, and pace; and no episodes of decompensation of extended duration. (Tr. at 16, 197-207.) He further opined that Claimant's mental impairments resulted in moderate limitations respecting his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(Tr. at 16, 211-13.) Dr. Saar found that the evidence did not support severe limitations in functional capacities due to a mental impairment and opined that Claimant "can learn and perform a variety of two-step activities involving simple command and minimal public contact." (Tr. at 16, 213.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in ignoring the opinions of the State agency non-examining physicians and the opinion of his treating psychiatrist. (Document No. 11 at 3-8.) He further alleges that the ALJ erred in finding that he had only mild limitations in social functioning. (Id. at 8.) Claimant notes that every physician who examined him found at least moderate difficulties in social functioning. (Id.)

In response, the Commissioner asserts that the ALJ properly accorded little weight to the opinions of the state agency reviewing medical experts because their findings were inconsistent with Claimant's performance of part-time work and were based largely on Claimant's subjective allegations. (Document No. 12 at 7-10.) Regarding Claimant's treating physician, the Commissioner asserts that he did not have one during the relevant period. (Id. at 9.) The Commissioner notes that Claimant was examined only twice at FMRS and that nothing in their report demonstrated that he experienced significant limitations due to his mental impairments. (Id.) Consequently, the Commissioner contends that the ALJ's finding of non-severe impairments is supported by the evidence which demonstrated only mild limitations in broad functional areas. (Id. at 9-10.)

Claimant further alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing his credibility. (Document No. 11 at 8-11.) Claimant asserts that his testimony demonstrated that he could not cope with minimal changes in a routine work setting. (Id. at 10.) He further asserts that though he denied the need of psychological treatment and medication, this may be part of his delusional disorder, which the ALJ failed to consider. (Id.)

10

In response, the Commissioner asserts that the ALJ's credibility analysis is supported by substantial evidence of record. (Document No. 12 at 10-12.) The Commissioner notes that Claimant underwent only two mental health evaluations, that he denied experiencing psychiatric problems, that he took no medication for his alleged severe mental impairments, that his treatment was effective because he never had been hospitalized, and Ms. Bell's mental status examination was unremarkable. (Id. at 11.)

Analysis.

1. Opinion Evidence.

Claimant first alleges that the ALJ erred in ignoring the opinions of the state agency reviewing medical experts and his treating physician. At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2008). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d

11

413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2008).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2008). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s) made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more

weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2008). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The ALJ reviewed the opinions of Drs. Smith and Saar and concluded that their opinions were entitled little weight because they were inconsistent with Claimant's reported activities of daily living and work history, and appeared to have been based primarily on Claimant's subjective complaints. (Tr. at 16.) The undersigned finds that the ALJ's decision to accord little weight to the state agency reviewing medical experts is supported by substantial evidence. The evidence indicates that at the time of the administrative hearing, Claimant was maintaining part-time employment as part of his living arrangements at the homeless shelter. (Tr. at 22.) He testified that he had worked twenty hours a week for The Lillian James Learning Center for a period of four months, which employment was arranged through a homeless shelter or vocational rehabilitation program. (Tr. at 24, 31.) He further testified that he was then working twenty-five hours a week at the Learning Center because the Center was short-staffed. (Tr. at 30.) Due to his employment, Claimant testified that the rehabilitation center closed his case. (Tr. at 24.) In addition to his employment, Ms. Bell's evaluation report indicated that Claimant interacted within normal limits during the examination and testing and that he occasionally went to the movies and to the mall. (Tr. at 172.) Though Claimant did not date, he indicated that he would like to date. (Tr. at 17, 172.) Additionally, Claimant reported that he walked to the post office on a daily basis. (Id.) He reported, however, that he felt insignificant in crowds and that he sometimes said things which were socially unacceptable. (Id.)

As the Commissioner points out, Claimant neither received any psychological treatment, nor took any medications for his mental impairments. His daily activities as summarized above included many activities, and Ms. Bell opined that his persistence and pace were normal but that his

15

concentration was moderately deficient.

In the absence of any psychological treatment and the limited mental health evidence of record, the undersigned finds that the ALJ's decision to accord little weight to the opinions of the state agency reviewing medical experts is supported by substantial evidence. As the Commissioner aptly points out, Claimant did not have a treating psychologist or psychiatrist. Furthermore, the undersigned finds that the ALJ's finding of non-severe mental impairments is supported by the evidence, as stated above.

2. Pain and Credibility Assessment.

Claimant also alleges that the ALJ erred in assessing his credibility. A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2008); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2008).   Additionally, the

16

Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your
> prior work record, your statements about your symptoms, evidence submitted by your
> treating, examining, or consulting physician or psychologist, and observations by our
> employees and other persons. . . .  Factors relevant to your symptoms, such as pain,
> which we will consider include:
>
>> (i) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other
>> symptoms.
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you
>> take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief
>> of your pain or other symptoms;
>>
>> (vi) Any measures you use or have used to relieve your pain or other
>> symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every
>> hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain
>> or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2008).

> SSR 96-7p repeats the two-step regulatory provisions:

>> First, the adjudicator must consider whether there is an underlying medically
>> determinable physical or mental impairment(s)--i.e., an impairment(s) that can be
>> shown by medically acceptable clinical and laboratory diagnostic techniques--that
>> could reasonably be expected to produce the individual's pain or other symptoms. *
>> * * If there is no medically determinable physical or mental impairment(s), or if there
>> is a medically determinable physical or mental impairment(s) but the impairment(s)
>> could not reasonably be expected to produce the individual's pain or other symptoms,
>> the symptoms cannot be found to affect the individual's ability to do basic work
>> activities.
>>
>> Second, once an underlying physical or mental impairment(s) that could
>> reasonably be expected to produce the individual's pain or other symptoms has been
>> shown, the adjudicator must evaluate the intensity, persistence, and limiting effects

> of the individual's symptoms to determine the extent to which the symptoms limit the
> individual's ability to do basic work activities.  For this purpose, whenever the
> individual's statements about the intensity, persistence, or functionally limiting
> effects of pain or other symptoms are not substantiated by objective medical
> evidence, the adjudicator must make a finding on the credibility of the individual's
> statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the

"type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to

alleviate pain or other symptoms" in assessing the credibility of an individual's statements.

Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as

step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a

claimant's ability to function along with the objective medical and other evidence in determining

whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe"

impairment is one which significantly limits the physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence

of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a

claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig,

76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the

individual's statements based on a consideration of the entire case record"). For example, the

allegations of a person who has a condition capable of causing pain may not be rejected simply

because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or]

redness" to corroborate the extent of the pain. Id. at 595. Nevertheless,  Craig does not prevent an

ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating

evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ

rejects allegations of pain <u>solely</u> because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 14-17.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 16.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 14-17.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the [C]laimant has no severe impairment or combination of impairments for the reasons explained above." (Tr. at 16.).

In his decision, the ALJ found that the objective findings and treatment notes did not support significant limitations in functioning. (Tr. at 15.) He noted that Claimant denied any serious psychiatric problems and believed that he did not need any psychiatric treatment. (<u>Id.</u>) The ALJ noted that Claimant received no mental health treatment or took any prescribed medications. (<u>Id.</u>) Furthermore, the ALJ noted that Claimant has never been hospitalized due to his symptoms. (<u>Id.</u>) He also noted that Claimant's daily activities were inconsistent with significant mental limitations. (<u>Id.</u>) Though Claimant reported problems dealing with stress and anger, with violent thoughts toward others, the ALJ found that the evidence, with the exception of Claimant hitting a girl while in junior high, demonstrated that he never acted on his thoughts. (<u>Id.</u>) Consequently, the ALJ found that to the extent Claimant had medical treatment, it was effective. (<u>Id.</u>) The ALJ thus determined that Claimant's mental impairments resulted in only mild limitations in activities of daily living and

maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 17.)

Based on the foregoing, the undersigned finds that the ALJ's credibility assessment was in accordance with the Regulations and is supported by substantial evidence of record. Accordingly, the undersigned finds that Claimant's arguments are without merit.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986);

<u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 2, 2011.

R. Clarke VanDervort
United States Magistrate Judge

21