# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

HARRY NICK RILEY, JR.,

        Plaintiff,

v.                                        CIVIL ACTION NO.  5:09-cv-01030

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This is an action seeking review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  By Standing Order [Docket 4] entered on September 25, 2009, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the Court are the parties' briefs seeking judgment on the pleadings [Dockets 11, 12].

On February 2, 2011, Magistrate Judge VanDervort submitted proposed findings and recommended that the court (1) deny Plaintiff's motion; (2) grant Defendant's motion; (3) affirm the final decision of the Commissioner; and (4) dismiss this matter from the Court's docket. (Proposed Findings and Recommendation ("PF & R") [Docket 13] at 20).  On February 15, 2011, Plaintiff filed timely objections to the Magistrate Judge's findings and recommendation (Docket 14).

The Federal Magistrates Act requires the district court to make a de novo review upon the record of any portion of the proposed findings and recommendations to which written objections

have been made. 28 U.S.C. § 636(b)(1); see also Fed.R.Civ.P. 72(b). Conversely, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149-50, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir.1983) (holding that districts courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district court's authority to choose among these options is independent of the statutory duty to afford review to those portions to which objections are addressed. *See Camby*, 718 F.2d at 199-200 ("If no objection were made, for example, it could hardly be argued that the judge must accept the [magistrate judge's] report if it contained an error of law apparent on its face."). As such, it is wholly within the district court's discretion to accept, reject, or modify a magistrate judge's proposal irrespective of any objections by the parties. *See United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Coinciding with district courts' discretion under the Federal Magistrates Act is the responsibility to ensure the just disposition of matters referred to magistrate judges. *See Mathews v. Weber*, 423 U.S. 261, 271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); *see also Raddatz*, 447 U.S. at 683.

I.

On November 19, 2007, Plaintiff filed his current application for DIB and application for supplemental security income, alleging in both applications that his disability began on July 1, 2007. These claims were denied on February 15, 2008, and denied again upon reconsideration on May 20,

2008. (Ptf's Mot. 2.) Plaintiff requested a hearing, and a video hearing was held on January 9, 2009, at which his claim was denied by an administrative law judge ("ALJ"). (Ptf's Mot. 2.) On February 18, 2009, the ALJ issued his opinion finding that Plaintiff has not been under a disability within the meaning of the Social Security Act from July 1, 2007, through the date of the decision. (R. 10.) Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied on July 29, 2009, and the decision became the final decision of the Commissioner. Plaintiff appealed the final decision to this Court on September 24, 2009, pursuant to 42 U.S.C. § 405(g).

II.

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration utilizes a five-step inquiry to determine eligibility for social security benefits. The steps are followed in order, and if a claimant is determined to be not disabled at one step, the evaluation proceeds to the next step. *See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005). The reviewing ALJ went through each of the five steps and made the following findings and conclusions with respect to Plaintiff:

>   1. The claimant meets the insured status requirements for the Social Security Act through December 21, 2011.
>
>   2. The claimant has not engaged in substantial gainful activity since July 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3

3. The claimant has the following medically determinable impairments: history of acute sinusitis and allergic rhinitis, history of orthostatic dizziness, learning disorder, borderline intellectual functioning, delusional disorder and schitzotypal personality disorder (20 CFR 404.1521 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 and 416.921).

5. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2007, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

(R. 13.)

The ALJ based his findings on Plaintiff's current work activity and his medical history. He cites a December 26, 2007, psychological evaluation by Sunny S. Bell, M.A., in which Plaintiff reported that he was applying for disability benefits because he "can't handle stress" and has had problems dealing with stress since the seventh grade. (R. 168-69.) He stated, "When I get stressed out, I can't tell whether I'm coming or going. I'm afraid that I will hurt myself or someone else." (R. 168-69.) During the evaluation, Plaintiff denied suffering from any serious psychiatric problems and having delusions, hallucinations or suicidal thoughts. (R. 169.) He admitted to having homicidal thoughts regarding a coworker, but he quit his job before he acted on any violent inclinations. (R. 169.) He revealed in that evaluation that he saw a psychologist for a couple months when he was in junior high school because of an incident where he hit a girl. (R. 169.) He was uncertain whether there was a history of psychiatric injury in his family. (R. 169.) He reported that he graduated from high school, made passing grades and did not have discipline problems. (R. 170.) He denied a history of drug or alcohol abuse. (R. 170.) He reported that he worked as a ditch digger for six months and as a dishwasher and maintenance worker at Tamarack from 2003 to 2007.

Bell, a licensed psychologist, noted that during the evaluation Plaintiff was cooperative, motivated and behaving in a socially appropriate manner. (R. 170.) She observed that his thought processes were logical and organized and she detected no perceptual problems. (R. 171.) She further noted that his concentration and remote memory skills were mildly deficient. (R. 171.)

Bell reported that the difference in Plaintiff's verbal and performance IQ is "often indicative of a learning disability." (R. 172.) She diagnosed him as having "Learning Disorder NOS," "Borderline intellectual functioning," "Borderline personality traits," and "Spinal column leakage, bad sinuses, per claimant report." (R. 172.) In her Diagnostic Rational, she explained,

> Learning disorder NOS is listed based upon the following: Mr. Riley's obtained test scores indicate a learning disability in spelling and antithetic skills. He was also noted to have a 16-point difference between his Verbal IQ and Performance IQ. Borderline personality traits are listed based upon the following: Mr. Riley appears to have affective instability due to a marked reactivity of mood. He also exhibits inappropriate intense anger and difficulty controlling his anger. He also reported stress related paranoid ideation.

(R. 172.) She reported that Plaintiff takes care of his own hygiene and grooming independently and adequately. (R. 172.) He does his own housework, cooking, cleaning, laundry, yard work and shopping. (R. 172.) Based on her evaluation, she concluded that Plaintiff interacted within normal limits and that his pace and persistence were within normal limits. (R. 172.) She reported a "Poor" prognosis and stated under "Capability," "It Is believed that Mr. Riley would be capable of managing his own benefits, should they be awarded." (R. 172-73.)

Another evaluation in the record is a psychiatric review of Plaintiff performed by Rosemary L. Smith, Psy. D, a state agency medical expert, dated February 14, 2008. (R. 175.) The evaluation form indicates a personality disorder and the following functional limitations: Mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate

5

difficulties in maintaining concentration, persistence or pace. (R. 185.) Smith concluded that Plaintiff was moderately limited in his abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, act appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. All other abilities evaluated were "not significantly limited." (R. 189-90.) Smith noted that despite these limitations, Plaintiff retains the ability to learn and perform simple unskilled work-like activities in an environment that involves limited contact with others. (R. 191.)

An evaluation by psychiatrist Sunita Singh, M.D., a state agency medical expert, dated April 3, 2008, diagnosed Plaintiff with Delusional Disorder and Schitzotypal Personality Disorder based on a mental status evaluation and Plaintiff's representations. (R. 193-93.) She stated the following in her evaluation:

> Patient was fully alert and oriented. He was dressed appropriately but was a little unkempt. He did not have any psychomotor agitation of retardation or any abnormal involuntary motor activity. He was trying to be overly pleasant. His speech was a little rapid at times, and he was difficult to interrupt. When I asked him to talk slowly, it was more understandable. His thought processes mainly focused on that he needs counseling for stress and not any medication. He denied any suicidal or homicidal ideation, plan or intent. He denied any auditory or visual hallucinations, but it seemed like he had some magical odd beliefs and had some paranoia that someone at work was against him. He denied that he can read other people's minds or that other people can read his mind. He denied any other ideas of reference. Insight is fair to limited. Judgement is fair to limited.

(R. 193-94.)

An evaluation by Timothy Saar, Ph.D., another state agency medical expert, dated March 3, 2008, reveals that Plaintiff visited a psychologist at the suggestion of his lawyer because he is

trying to get Social Security benefits. (R. 195.) In this evaluation, Plaintiff admitted to having sexual fantasies and wanting to kill a coworker around 2007, but he has never acted upon his fantasies because he realizes he could get in trouble. (R. 195.) Saar made the following observations: "He has fair grooming. He is cooperative and clean. Speech is slow and relevant. Thought process appears coherent. He denies suicidal thoughts, plan or intent. He denies auditory or visual hallucinations. No paranoia." (R. 196.) Saar found that Plaintiff was mildly restricted in activities of daily living, and had moderate difficulties in maintaining social functioning, concentration, persistence, or pace. (R. 207.)

Based on those evaluations, the ALJ concluded that the evidence does not support significant limitations. He found that Plaintiff has no physical condition for which he undergoes treatment and he has denied serious psychiatric problems. (R. 15.) He concluded that Plaintiff's daily activities are inconsistent with significant mental limitations. (R. 15.) The ALJ further found that Dr. Smith and Dr. Saar's findings of limitation were inconsistent with Plaintiff's daily activities and part-time work activities. (R. 16.) Considering the "four broad functional areas" set out in the disability regulations, the ALJ found as follows:

1. Daily living: Plaintiff has mild limitations but he reported caring for his personal needs.

2. Social functioning: Plaintiff has mild limitation but his social functioning is within normal limits. He reported that he occasionally goes to movies and the mall, and although he was not dating he would like to.

3. Concentration, persistence or pace: Plaintiff has mild limitation, but he reported managing his own finances. His concentration was moderately deficient but persistence and

pace were normal. During his hearing the ALJ observed Plaintiff concentrate and answer all questions asked of him.

4. Episodes of decompensation: Plaintiff has experienced no severe episodes of decompensation. (R. 16-17.)

Based on these areas of impairment, the medical evaluations and Plaintiff's testimony at the hearing, the ALJ found that Plaintiff's impairments cause no more than mild limitation, and he concluded that Plaintiff is not disabled under sections 216(I) and 223(d) of the Social Security Act. (R. 17.)

### III.

Plaintiff filed his complaint on September 24, 2009, appealing the ALJ's decision. In the complaint he alleges that the decision is arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence. (Compl. ¶ 6.) In his motion for judgment on the pleadings, Plaintiff contends that the ALJ ignored the opinions of the state agency physicians and failed to accord adequate weight to his treating psychiatrist's opinion. (Ptf's Mot. 3.) He further contended that the ALJ erred in finding him not entirely credible based on his refusal of medication or treatment for his psychological problems, asserting that his refusal may have been in part due to his delusional disorder. (Ptf's Mot. 9-10.)

In the Defendant's motion for judgment on the pleadings, he asserts that the ALJ's opinion should be affirmed because Plaintiff sought mental health treatment for the first time eight months after his alleged onset date of disability, and his treatment consists of only two evaluations. (Def's Mot. 3.) Pointing to the fact that Plaintiff worked during part of the period he claimed to be

disabled, Defendant asserts that the evidence shows that Plaintiff's impairments do not significantly limit his ability to do basic work activities. (Def's Mot. 8.)

In his PF&R, Judge VanDervort described the process for adjudicating disability claims provided by the Social Security Regulations. He explained the sequential order of necessary inquiries beginning with whether a claimant is disabled, then whether he is engaged in substantial gainful employment, whether he suffers from a severe impairment equal to the impairments set forth in the administrative regulations, if the impairments prevent the performance of past relevant work and finally, whether the claimant is able to perform other forms of substantial gainful activity. (PF&R 2-3; 20 C.F.R. §§ 404.1520, 416.920.) He additionally set forth the technique that must be followed when a claimant alleges a mental impairment. (PF&R 3; 20 C.F.R. §§ 404,1520a(a) and 416.920a(a).)[1]

---

[1]This technique is set forth as follows:
(c) Rating the degree of functional limitation. (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning;
(continued...)

In finding that the ALJ's decision is supported by substantial evidence, Judge VanDervort fully considered the medical records summarized above, Plaintiff's challenges to the decision and Defendant's assertions. Judge VanDervort found that the weight given to Dr. Smith and Dr. Saars was appropriate considering Plaintiff's own assertions that he maintained part-time employment and participated in daily activities, the other expert opinions that he interacted within normal limits, and the fact that Plaintiff did not receive psychological care or take medications for his mental impairments. (PF&R 15.)

The magistrate judge further found that the ALJ properly assessed Plaintiff's credibility in determining that while Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," his statements "concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the finding that the [C]laimant has no severe impairment or combination of impairments for the reasons explained above." (PF&R 19, R. 16.) Plaintiff filed his objections to the PF&R on February 15, 2011.

---

[1](...continued)
concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. § 404.1520a(c).

IV.

Section 405(g) of the Social Security Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .." 42 U.S.C. § 405(g). This language limits the Court's role in reviewing the ALJ's decision to determining whether his findings are supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

"Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Substantial evidence has also been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hays*, 907 F.2d at 1456 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971). When the Commissioner's decision clearly disregards the overwhelming weight of the evidence, the Court may modify or reverse the decision. *Id.*

V.

In his objections, a document measuring one and a half pages, Plaintiff asserts only the argument that "The Commissioner erred in finding that the ALJ's finding of non-severe mental

impairments is supported by the evidence, mainly that the Plaintiff does not have a treating psychologist." (Obj. 1.)

The Court construes Plaintiff's objections as follows: 1) objecting to the reference to Plaintiff's part-time job and the fact that he has no treating psychologist in the determination of his credibility, 2) objecting to the magistrate judge's failure to take into consideration that Plaintiff's refusal of treatment is due to his delusional disorder in his finding that the absence of treatment was an appropriate consideration, and 3) objecting to the magistrate judge's finding that adequate weight was given to the different experts' opinions. The Court will address these three objections. 20 C.F.R. § 404.1571.

With respect to the first objection, one of the steps in the administrative regulations for determining a disability is the work the claimant has done during any period he believes he is disabled.[2] The fact that Plaintiff was employed during the period he is alleging disability is not only relevant to the determination, but a necessary and required consideration. Plaintiff asserts that his part-time job is maintained through the homeless shelter in which he stays and he is constantly monitored in that position, but these facts do not contravene the ALJ's finding that "The claimant worked after the established disability onset date, and he testified that he is currently working

---

[2] 20 C.F.R. § 404.1571 provides,

> The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level. If you are able to engage in substantial gainful activity, we will find that you are not disabled. (We explain the rules for persons who are statutorily blind in § 404.1584.) Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity.

20 C.F.R. § 404.1571

through vocational rehabilitation, but this work activity does not rise to the level of substantial gainful activity." (R. 13.)

With respect to his lack of a treating psychologist, Plaintiff cites to a portion of the record in support of his statement that he did maintain a treating psychologist at one time, who diagnosed him with delusional disorder. However, the records to which he cites are portions of the evaluations by Dr. Singh and Dr. Saar that simply reflect what Plaintiff has told them. (R. 193-96.) Specifically, Dr. Singh's evaluation states, "He reports that he was seen in the past by Dr. Hasan and was on Librium for anxiety." (R. 193.) Dr. Saar's evaluation states under Past Psychiatric History, "He has been at this facility in the past and received counseling. He was diagnosed with Schizotypal Personality Disorder. No psychiatric hospital admissions. He has seen Dr. Hasan in the past as well." (R. 196.) There is no evidence or medical records to substantiate this prior treatment. Moreover, the ALJ does not assert that Plaintiff has never been treated by a psychologist. Rather, he states that "Although claimant has undergone only minimal treatment for his psychological symptoms and has refused medication, he has never been hospitalized due to his symptoms." (R. 16.) This finding is supported by the evidence.

As to Plaintiff's second objection, the idea that Plaintiff is refusing treatment as part of his delusions is conjecture and not supported by the evidence. None of the evaluations in the record suggest that Plaintiff is suffering from delusions that might effect his ability to seek treatment. Indeed, in the evaluations, Plaintiff denies any serious psychiatric problems, but in at least one he expresses an interest in counseling for stress. (R. 194.) At his hearing, Plaintiff stated that he was delusional at times, but that he knows the difference between reality and fantasy. ®. 34.) Even if one assumes that the diagnosis of "Delusional Disorder" and his failure to seek treatment presents

an inconsistency or discrepancy, the standard of review does not require the Court to consider every possible explanation for discrepancies in the record. Rather, the Court must consider the whole record and determine whether the Commissioner's decision was rational and whether it was against the overwhelming weight of the evidence. There is substantial evidence that supports the finding that Plaintiff was not entirely credible, one consideration being that he declined to seek consistent psychological, psychiatric or medical treatment for his allegedly disabling symptoms.

Finally, with respect to the third objection, the ALJ afforded the opinions of Dr. Smith and Dr. Saar little weight because their opinions that Plaintiff had mild or moderate limitations in some areas were inconsistent with his reported daily activities. (R. 16.) As noted by Judge VanDervort in his PF&R, when an ALJ does not give controlling weight to a treating source's opinion, he must explain the weight given to the opinions of state agency psychological consultants.[3] 20 C.F.R. §§ 404.1527(f)(2)(ii). Here, the ALJ explained the weight he gave the state experts' opinions and based his findings on the other evidence in the record that was inconsistent with those opinions. He found that the opinions of Dr. Smith and Dr. Saars were largely based on Plaintiff's own subjective representations. (R. 16.) Plaintiff's work history and descriptions of his daily activities, as well as his stated ability to restrain himself from acting upon stress or fantasies, amount to substantial evidence that supports the ALJ's findings. The opinions of Dr. Smith and Dr. Saars do not amount to overwhelming evidence to the contrary.

---

[3]The "treating physician rule" applies to entitle the opinion of a treating physician to great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). Here, since it does not appear that the physicians or experts whose evaluations appear in the record saw Plaintiff more than once, the objectives of the treating physician rule are not accomplished by giving great weight to any of their opinions.

VI.

The Court finds that the record contains substantial evidence which supports the Commissioner's findings and conclusion. Accordingly, the Court **ORDERS** that the magistrate judge's Proposed Findings and Recommendation [Docket 13] be **ADOPTED**, that Defendant's Motion for Judgment on the Pleadings [Docket 12] be **GRANTED**, and that Plaintiff's Motion for Judgment on the Pleadings [Docket 11] be **DENIED.** The Court further **ORDERS** that the final decision of the Commissioner be **AFFIRMED** and that this matter be **DISMISSED** from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 25, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA